# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL HEATH, :
　　　　　　　　　　　　　　　　　:
　　　　Plaintiff, : CIVIL NO. 4:04-CV-2275
　　　　　　　　　　　　　　　　　:
　v. : Hon. John E. Jones III
　　　　　　　　　　　　　　　　　:
DAVID MARTIN, *et al.*, :
　　　　　　　　　　　　　　　　　:
　　　　Defendants. :

## MEMORANDUM

July 30, 2010

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Plaintiff Daniel Heath ("Plaintiff" or "Heath"), an inmate presently confined at the Dallas State Correctional Institution ("SCI-Dallas") in Dallas, Pennsylvania, initiated the above action *pro se* by filing a Complaint under the provisions of 42 U.S.C. § 1983.

Presently before the Court are Motions for Summary Judgment filed on behalf of the only remaining Defendants in this case, Defendant David Martin, Physician Assistant ("P.A.") (Doc. 157) and Defendant Pamela Wolfgang, Registered Nurse ("R.N.") (Doc. 151). The Motions have been fully briefed and are ripe for disposition. For the reasons set forth below, the Motions will be granted.

## PROCEDURAL BACKGROUND

In his Complaint, filed on October 18, 2004, Heath claims that Defendants[1] were deliberately indifferent to his serious medical needs while he was an inmate at the Frackville State Correctional Institution ("SCI-Frackville") in Frackville, Pennsylvania. He alleges that Defendants' failure to provide adequate medical care for his abdominal symptoms led to his perforated ulcer, for which he had surgery on December 1, 2003.

By Memorandum and Order dated July 28, 2005, a Motion to Dismiss was granted as to the claims against Defendants Singh, O'Connor, Sims, Wychock, and Silva, and they were dismissed as Defendants. (*See* Doc. 46). The Motion was denied as to Defendants Martin and Hock. (*See id.*) In a Memorandum and Order dated February 13, 2007, a Motion for Judgment on the Pleadings was granted as to the claims against Defendants Shannon, Kerestes, Malewski, Bright, Davis, and Wolfe, and they were dismissed as Defendants. (*See* Doc. 87). However, the Motion was denied as to Defendant Wolfgang. (*See id.*)

---

[1] Plaintiff named the following Defendants in his Complaint: Superintendent Robert Shannon; Deputy Superintendent John Kerestes; Health Care Administrator Barbara G. Malewski, R.N.; David Martin, P.A.; Pam Wolfgang, R.N.; Jessica Hock, P.A.; Mr. Wychock, P.A.; Sandy Davis, R.N.; Dr. O'Connor; Ron Silva, P.A.; Dr. Singh; Michael Sims, P.A.; Patty Wolfe, R.N.; and Barbara Bright, R.N.

By Memorandum and Order dated September 16, 2008, a Motion for Summary Judgment filed on behalf of Defendant Wolfgang was denied. (Doc. 116). On June 18, 2009, a Motion for Summary Judgment filed on behalf of Defendants Martin and Hock was granted as to Hock and denied as to Martin. (Doc. 134.) Accordingly, only Martin and Wolfgang remain as Defendants.

By Order dated January 14, 2010, we referred this case to Magistrate Judge Martin C. Carlson for a status conference as to the remaining claims against Martin and Wolfgang. (Doc. 136.) Following the February 3, 2010 conference, Judge Carlson issued a Case Management Order providing, *inter alia*, that dispositive motions, together with motions requesting leave to file a motion *nunc pro tunc*, were to be filed on or before February 17, 2010. (*See* Doc. 143 at 2-3[2].) Accordingly, on February 17, 2010, Remaining Defendants filed Motions for Summary Judgment (Docs. 151, 157) along with their Motions requesting leave to file their additional motions (Docs. 148, 155).

By Order dated May 11, 2010, we granted Martin and Wolfgang's requests for leave to file their additional motions. (*See* Doc. 166.) Because Heath had not yet filed his opposition to the Motions for Summary Judgment, we also specifically

---

[2]For the convenience of the reader, citations to page numbers refer to the page numbers on the CM/ECF electronic record.

3

directed him to file his opposition, including opposing briefs and statements of material facts, as required by Middle District of Pennsylvania Local Rule ("LR") 56.1, within twenty-one (21) days from the date of the Order. (*See id.* at 11 ¶ 5.) On June 1, 2010, Heath filed an opposition brief (Doc. 171) addressing both Motions. He also filed supporting exhibits (Doc. 171-2) and a declaration (Doc. 171-3). Defendant Martin filed a reply brief (Doc. 175) on June 29, 2010. Defendant Wolfgang filed a reply brief (Doc. 172) and an accompanying appendix (Doc. 173) on June 16, 2010. Accordingly, both Motions for Summary Judgment are fully briefed and ripe for review.[3]

## STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of

---

[3]Heath submitted sur-reply briefs to both Motions for Summary Judgment. (Docs. 174, 176.) LR 7.7 provides that, after the moving party files a reply brief, "[n]o further briefs may be filed absent leave of court." LR 7.7. Because Heath did not seek leave to file further briefs, his sur-reply briefs (Docs. 174, 176) have not been reviewed by the Court in disposing of the instant Motions.

evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir.

2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

## DISCUSSION

### I. Undisputed Facts

Despite our specific direction to Heath in our May 11, 2010 Order (Doc. 166) to file his opposition to the two Motions for Summary Judgment by filing opposing briefs and statements of material facts as required by M.D. Pa. LR 56.1[4], he failed to

---

[4]LR 56.1 provides, in pertinent part, as follows:

> The papers opposing a motion for summary judgment shall include a **separate**, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
> Statements of material facts in support of, or in opposition to, a motion [for summary judgment] **shall include references to the parts of the record that support the statements.** All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(continued...)

file separate statements of material facts controverting the statements filed by Defendants. Although he includes a section labeled "Statement of Relevant Facts" in his opposition brief (*see* Doc. 171 at 3), Heath fails to respond directly to the numbered paragraphs in either Defendants' Statement of Material Facts ("SMF"). He also fails to cite to the parts of the record that support his statements, and therefore he has not complied with LR 56.1. In many instances, Heath cites to the allegations in his Complaint to support his responses disputing Defendants' facts. Because a party responding to a motion for summary judgment may not rest on the allegations of his complaint, but rather must point to specific facts showing there is a genuine issue for trial, *see Jones, supra,* 214 F.3d at 407, Plaintiff's citations to the Complaint to support his statements are insufficient to controvert Defendants' facts. Therefore, in accordance with LR 56.1, all material facts set forth in Defendant Martin's Statement of Material Facts (Doc. 158) and Defendant Wolfgang's Statement of Material Facts (Doc. 153) will be deemed admitted. *See* LR 56.1. Defendants' Statements and supporting exhibits establish the following undisputed facts material to the instant Motions:

---

[4](...continued)
LR 56.1 (emphasis added). Plaintiff was provided with a copy of LR 56.1 along with the Standing Practice Order issued in this case (*see* Doc. 3), and the Court referred him to the rule in directing him to file his opposition to the instant Motions (*see* Doc. 166).

A.  **Facts Regarding Medical Treatment from December 18, 2002 through November 10, 2003**

On December 18, 2002, Heath was seen by the SCI-Frackville Medical Department to review his laboratory work. (Doc. 158, Defendant Martin SMF, ¶ 2.) At that time, Heath admitted to eating "lots of soups." (*Id.*) He was advised on proper eating, drinking, and exercising. (*Id.*)

On January 8, 2003, Heath was seen because he had an upset stomach. (*Id.* ¶ 3.) He reported that his last bowel movement had been three (3) or four (4) days before. (*Id.*) Upon examination, P.A. Hock found that Heath's abdomen was not distended, but was soft and non-tender, and that there were no masses. (*Id.*) Her assessment was that Heath was constipated. (*Id.*) The progress notes reflect that Heath was given 30 cubic centimeters of "MOM" (milk of magnesia). (Doc. 159-5, Progress Notes, at 2). The progress notes also refer to the Physician's Orders for that date, which state that Heath was prescribed a 100 milligram dosage of Colace to be taken for thirty (30) days. (*See id.*; Doc. 159-13, Physician's Orders, at 17).

Heath agreed during his deposition that he had no serious stomach problems from January 2003 through November 3, 2003. (Doc. 158 ¶ 122.)

### B. Facts Regarding Heath's Visit to Defendant Martin on November 10, 2003

On November 10, 2003, Heath reported to Defendant Martin that his kidneys were on fire. (*Id.* ¶ 7.) His progress notes reflect that he had vague symptoms, numerous disconnected complaints, and no flank discomfort to palpation. (*Id.*) The notes also state that Heath had a normal GI evaluation, and reflect that Heath was advised to apply moist heat and to purchase over-the-counter ("OTC") analgesics. (*See* Doc. 159-5 at 2).

Martin has submitted a declaration under penalty of perjury stating as follows with regard to his visit with Heath on November 10, 2003:

On November 10, 2003, Heath did not complain of abdominal pain or that he had vomited a substance which looked like black coffee beans or that a black substance was coming from his nose. (Doc. 158 ¶ 144; Doc. 159-15, Martin V.S. ¶ 8.) Heath did not have clinical signs or complaints of a perforated ulcer, and if he had a perforation at that time, he would have had severe abdominal pain which would have progressed rapidly within twelve (12) hours. (Doc. 159-15 ¶ 9.) To a reasonable medical certainty, Martin does not believe that Heath would have had a different outcome if he had surgery on November 10, 2003. (*Id.* ¶ 11.) Martin used his best medical judgment when determining what treatment Heath should receive for his

complaints. (*Id.* ¶ 6.) In his professional medical opinion, everything was done appropriately to diagnose and treat Heath's complaints on November 10, 2003, and the treatment rendered was reasonable and within the standard of care. (*Id.* ¶¶ 13, 14.)

November 10, 2003 was the only occasion on which Martin saw Heath. (Doc. 158 ¶ 8.) Heath testified during his deposition that he did not buy a hot compress or OTC analgesics after meeting with Martin. (*Id.* ¶ 125.) He further testified that he neither saw a medical provider between November 10, 2003 and December 1, 2003, nor filed a grievance relating to his stomach problems. (*Id.* ¶¶ 126, 128.)

### C. Facts Regarding Events of December 1, 2003 through December 26, 2003

Heath testified during his deposition that, on December 1, 2003, he self administered an enema using a plastic water bottle because he was not moving his bowels. (*Id.* ¶ 129.) He testified that he never was advised to self administer an enema. (*Id.* ¶ 130.) Approximately five (5) and one-half (½) hours after he self administered his enema, he began to have pain. (*Id.* ¶ 131.)

In his Complaint, Heath alleges that, on December 1, 2003 at 2:45 a.m., he awoke from his sleep because of stomach pains, and security and medical personnel were summoned to his cell. (Doc. 1 ¶ 33.) However, in his deposition, he admitted that, because he was in pain, he was uncertain as to the time that he awoke. (*See* Doc.

10

154 at 27, Page 75, lines 5-10.)

As verified by Peter Damiter, Corrections Superintendent's Assistant at SCI-Frackville, the entries in the SCI-Frackville security logbook for December 1, 2003 show the following: around 4:20 a.m., security personnel were notified that Heath needed to be seen by medical for severe stomach pains; at 4:25 a.m., Defendant Wolfgang went to A-block to see Heath; and, at 4:40 a.m, Heath was transported to the Medical Department. (Doc 153, Wolfgang SMF, ¶¶ 18-20; Doc. 154, Damiter Decl., ¶ 3; Doc. 154 at 5, Logbook Excerpt.)

Damiter also has verified that the Housing Unit A Log shows that a nurse arrived to see Heath at 4:15 a.m, and that Heath was escorted to the Medical Department at 4:55 a.m.. (Doc. 153 ¶¶ 21-22; Doc. 154 ¶ 4; Doc. 154 at 7.)

Following his transport to the Medical Department, Heath remained in the Medical "ER" for observation. (Doc. 153 ¶ 23.) Wolfgang's declaration, as well as her documentation in Heath's progress notes, establish the following:

On December 1, 2003 at approximately 4:50 a.m., Wolfgang was summoned to Heath's cell. (Doc. 154 at 33-35, Wolfgang Decl., ¶ 4.) Wolfgang documented the nursing care that she provided to Heath in his medical records. (*Id.* ¶ 5.) When Wolfgang initially spoke with Heath, he complained of stomach pain. (*Id.* ¶ 6.) At

11

that time, Wolfgang took Heath's vital signs, including his blood pressure, heart rate, and respiration. (*Id.* ¶ 7.) She also felt his abdomen and noted that it was hard and non-distended. (*Id.*)

Heath then was brought to the medical "ER" at SCI-Frackville for observation. (*Id.* ¶ 8.) Wolfgang documented in Heath's progress notes that Dr. Sterling called. (*Id.* ¶ 9.) Dr. Sterling ordered Wolfgang to give Heath pain medication and keep him in the ER until Dr. Stanish arrived later that morning. (*Id.*) Pursuant to Dr. Sterling's orders, Wolfgang administered 50 milligrams of Ultram, a pain medication, to Heath at 5:00 a.m. (*Id.* ¶ 10.) Heath's records of Physician's Orders also show that at 4:55 a.m. on December 1, 2003, Dr. Sterling ordered that Heath be given Ultram. (Doc. 159-13, Physician's Orders, at 11.)

At 5:40 a.m., Heath reported that his pain had eased earlier, but had returned. (Doc. 154 at 34, Wolfgang Decl., ¶ 11; Doc. 159-5, Progress Notes, at 3.) Wolfgang again checked Heath's vital signs, including his blood pressure, heart rate, and respiration. (*Id.*) She instructed Heath to take slow, deep breaths. (Doc. 154 at 35 ¶ 12; Doc. 159-5 at 3.) At 6:00 a.m., Wolfgang completed an Electrocardiogram ("EKG") on Heath, submitted her report to the day shift, and completed her shift. (Doc. 154 at 35 ¶¶ 13-14; Doc. 159-5 at 3.) Wolfgang declares that, contrary to

Heath's claim, she continuously provided care and medical attention to Heath on December 1, 2003. (Doc. 154 at 35¶ 15.)

Heath's progress notes reflect that he was monitored by medical staff until Dr. Stanish's arrival at approximately 8:30 a.m. (Doc. 159-5 at 3-5.) Following his evaluation of Heath, Dr. Stanish ordered x-rays, blood work, and rehydration. (Doc. 159-13, Physician's Orders, at 11.) He also spoke to Dr. Modery at SCI-Mahanoy regarding Heath's transfer there for evaluation and treatment. (Doc. 159-5 at 5.)

Heath was transferred to SCI-Mahanoy on December 1, and at approximately 3:00 p.m., he was examined by Dr. Modery. (Doc. 159-5 at 8.) Dr. Modery's assessment was that Heath had acute abdominal pain and a possible perforation, and therefore, she ordered that he be transported to Good Samaritan Regional Medical Center ("Good Sam") in Pottsville, Pennsylvania for further evaluation. (*Id.*; Doc. 159-13 at 12.)

On December 2, 2003, Heath was admitted to Good Sam. (Doc. 159-5 at 8.) On that same date, Dr. Modery noted in Heath's progress notes that she had spoken to nurses at Good Sam and had been informed that Heath had a perforated gastric ulcer and a near total gastrectomy. (*Id.* at 9.) A billus II resection was needed and performed. (*Id.*) Heath returned to SCI-Mahanoy on December 10, 2003. (*Id.* at 10.)

13

On December 26, 2003, he was transferred back to SCI-Frackville. (*Id.* at 24.)

## II. Analysis

### A. Legal Standard

Heath alleges that Defendants Martin and Wolfgang were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 105 (1976)).

The test for whether a prison official was deliberately indifferent is whether that

defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Singletary v. Pennsylvania Department of Corrections*, 266 F.3d 186, 192 n.2 (3d Cir. 2001). Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." *Estelle*, 429 U.S. at 106.

Moreover, in order to recover damages on a § 1983 claim, a plaintiff has the burden of proving that a defendant's actions "were both the actual and proximate cause of [his] injuries." *See Miszler v. Shoemaker*, 2009 WL 790139, at *5 (M.D. Pa. Mar. 20, 2009) (Vanaskie, J.) (quoting *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990)); *see also Walthour v. Tennis*, 2009 WL 2957742 at *4 (M.D. Pa. Sept. 9, 2009) (Vanaskie, J.). If a causal relationship is not obvious, expert medical testimony on causation must be presented.[5] *See id.* In addition, where a medical condition is "sophisticated" such that its seriousness would not be apparent to a lay person,

---

[5] "An obvious causal relationship only exists when the injury is either an 'immediate and direct' or the 'natural and probable' result of the underlying act. *See Walthour*, 2009 WL 2957742 at *4 n. 5 (quoting *Texter v. Merlina*, 2008 WL 545032 *1 (M.D. Pa. Feb. 26, 2008) (Conner, J.)).

15

competent proof in the form of expert medical testimony must be offered to prove causation between alleged deliberate indifference and damages in a § 1983 action. *Miszler*, 2009 WL 790139, at *6 (citing *Wooler v. Hickman County, Kentucky*, Civil Action No. 5:05CV-247-R, 2008 WL 5412826, at *8 (W.D. Ky. Dec. 30, 2008); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 473-74 (3d Cir. 1987).

## B. Defendant Martin

Heath alleges that Defendant Martin was deliberately indifferent to his serious medical needs by refusing or failing to provide adequate medical treatment when he saw Heath in the SCI-Frackville Medical Department on November 10, 2003. In order for his claims to survive the instant Motion for Summary Judgment, Heath is required to point to some evidence that Defendant Martin was aware of a substantial risk of harm at that time. *See* Farmer, 511 U.S. at 837; *Singletary*, 266 F.3d at 192 n.2. Heath has failed to present expert medical testimony to show that Martin's actions at the time he examined Heath on November 10, 2003 caused harm to Heath in the form of having a perforated ulcer that required surgery.[6] In particular, Heath has failed to submit any

---

[6]In opposing Martin's Motion for Summary Judgment, Heath argues that Martin's argument regarding causation is moot because Heath never alleged that Martin "caused" his perforated ulcer, his inflamed kidneys, or the black coffee ground like fluids. (*See* Doc. 171 at 6.) Martin is not arguing that Heath alleges that Martin caused these physical symptoms. Rather, Martin is arguing that expert medical testimony would be required for Heath to establish that Martin's actions or
(continued...)

expert medical evidence to contradict Martin's professional medical opinion that the medical treatment he provided was reasonable and appropriate and that he did not believe that the medical treatment that was provided to Heath presented a substantial risk of serious harm to him. Moreover, because a perforated ulcer is a "sophisticated" medical condition, and thus a causal relationship between Martin's alleged deliberate indifference and Heath's damages is not "obvious," medical expert testimony would be required to educate the jury as to whether an alternative to surgery would have existed if Heath had been diagnosed with a perforated ulcer on November 10, 2003, or if he would have had a different outcome if he had surgery on November 10 rather than December 1. Because Heath has failed to present this expert evidence to counter Martin's verification (Doc. 159-15), and in fact testified at his deposition that no medical expert has indicated an interest in testifying for him in this case (*see* Doc. 159-14 at 16-17, Pages 61-62), Martin's medical opinion on the aforementioned issues (*see* Doc. 159-15, Martin V.S.) must be deemed unopposed. *See Saldana*, 260 F.3d at 232; *Ford v. Mercer County Correctional Center*, 171 Fed. Appx. 416, 420 (3d. Cir. 2006). Therefore, Martin is entitled to judgment as a matter of law.

---

[6](...continued)
omissions in treating him on November 10, 2003 caused harm to Heath in the form of later suffering from a perforated ulcer. (*See* Doc. 159 at 5-11.)

17

### C. Defendant Wolfgang

Heath alleges that Defendant Wolfgang was deliberately indifferent to his serious medical needs by failing to treat him on the morning of December 1, 2003. In his Complaint, Heath alleges that he awoke at 2:45 a.m. and requested medical care. (Doc. 1 ¶ 33.) However, Heath has failed to submit any evidence controverting the undisputed facts establishing that Defendant Wolfgang arrived at his cell at approximately 4:25 a.m., which was about five (5) minutes after security was alerted that Heath was in need of medical attention. (*See* Doc. 153, Wolfgang SMF, ¶¶ 18-24; Doc. 154 at 33-35, Wolfgang Decl., ¶¶ 4-15)

In addition, Heath testified in his deposition that, during the time period when he was in the Medical Department, Defendant Wolfgang was present and "in and out of the room," but failed to provide any medical attention. (*Id.* at 28, Pages 79-80.) However, Heath has failed to submit any evidence to controvert the undisputed facts as recorded in his progress notes and physician's orders. (*See* Doc. 159-5 at 3, Progress Notes; Doc. 159-13 at 11, Physician's Orders.) These facts establish that Wolfgang monitored him from the time she was summoned to his cell at 4:50 a.m. until her shift ended at 6:00 a.m., including by checking his vital signs and performing an Echocardiogram, and that, during that time, she spoke to Dr. Sterling and gave

18

Heath pain medication pursuant to Dr. Sterling's order. (*See* Doc. 153, Wolfgang SMF, ¶¶ 18-24; Doc. 154 at 33-35, Wolfgang Decl., ¶¶ 4-15.) Heath also has failed to submit any evidence to contest that Wolfgang is a Registered Nurse, and thus, in accordance with 49 Pa. Code § 21.11, *et seq.*, making a medical diagnosis is not within the scope of the practice of professional nursing. (*See* Doc. 153 ¶ 27.)

Even if Heath successfully disputed that Wolfgang provided him with adequate medical treatment and that she delayed his receipt of further treatment, he still would not be able to establish that the alleged delay constituted deliberate indifference without expert medical testimony. Specifically, expert medical testimony would be required to establish the consequences of a delay in treating a perforated ulcer because any consequences would not be obvious to a lay person. *See Miszler*, 2009 WL 790139, at *6; *Boring*, 833 F.2d at 473-74. Therefore, the entry of summary judgment in Wolfgang's favor is appropriate because Heath has not presented evidence that a substantial harm resulted from the alleged delay in diagnosis and treatment such that Defendant Wolfgang was deliberately indifferent to his serious medical needs. *See Hakeem v. Salaam*, 260 Fed. Appx. 432, 434-35 (3d Cir. 2008) (finding District Court correctly concluded that inmate failed to offer any evidence to support his allegations of deliberate indifference and that inmate cannot rest upon mere allegations at

summary judgment stage, particularly where medical records show he received treatment in response to his complaints).

## III. CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment filed on behalf of Defendants Martin (Doc. 157) and Wolfgang (Doc. 151) will be granted. An appropriate Order will enter.