**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL HEATH, | : | |
| | : | |
| Plaintiff, | : | No. 4:04-CV-2275 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| DAVID MARTIN, et al., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### July 17, 2013

## I. INTRODUCTION

This matter comes before the Court on the renewed motions for joinder of

parties (doc. 252) and for substitution of parties (doc. 254) of the *pro se* Plaintiff,

Daniel Heath ("Plaintiff"). The parties and the Court are intimately familiar with

the procedural posture of this matter, which has been actively litigated on this

Court's docket for nearly nine years; as such, we recite only the most pertinent

background material here for the benefit of the reader.

The *pro se* Plaintiff commenced this action under 42 U.S.C. § 1983 on

October 18, 2004, with the filing of a complaint (doc. 1), asserting various civil

rights claims against fourteen defendants in all.[1] Therein, the *pro se* Plaintiff

---

[1] As we noted in denying the Plaintiff's first motion to substitute, all Defendants with the exception of David Martin have since been dismissed.

alleges that Defendant David Martin ("Martin"), collectively with others and individually, acted negligently and with deliberate indifference in the medical care and treatment of the Plaintiff during his incarceration. (*Id.*). On September 30, 2011, Martin's counsel filed a Suggestion of Death (doc. 200) for Martin, and on October 4, 2011, cognizant of the legal import of Martin's passing under Federal Rule of Civil Procedure 25(a), we ordered the *pro se* Plaintiff to file a motion for substitution of a proper party pursuant to Rule 25(a)(2) or face dismissal of his lawsuit. The Plaintiff filed a motion for substitution and request for a hearing on October 27, 2011 (doc. 206).

The parties fully briefed their respective positions on that motion, and thereafter, we ordered them to jointly undertake an investigation to determine whether a proper party capable of being substituted for Martin exists. At the conclusion of that investigation, the parties submitted status reports which noted that Martin was divorced at the time of his death with no tangible asserts and that the closest surviving relative was a step-daughter, his former wife's child by a prior union. After reviewing the parties' reports, Chief Magistrate Judge Martin C. Carlson issued a report and recommendation which concluded that "while the claim against [Martin] survives his death, nothing else tangible survives." Judge Carlson specifically found that there are no assets to which any potential successor

could succeed and, further, that it would be inequitable and inappropriate to force Martin's stepdaughter to litigate this action in this venue, hundreds of miles from her home, given her attenuated connection to Martin in the first place. (Doc. 237, pp. 10-11). Cognizant of the reality that failure to identify a substitute party would result in the dismissal of the remainder of the Plaintiff's lawsuit, Judge Carlson recommended that we grant the Plaintiff an additional ninety (90) days in which to file another motion to substitute should an appropriate party be discovered. (*Id.*). We wholly agreed with Judge Carlson's analysis and, on July 13, 2012, issued a memorandum and order (doc. 246) which adopted his report and recommendation in its entirety.

Consistent with the leave granted in our July 13, 2012 Order, the *pro se* Plaintiff filed renewed motions for joinder (doc. 252) and substitution (doc. 254) on April 22, 2013. In his motion for substitution, the *pro se* Plaintiff argues that the cause of action survives Martin's death—a conclusion which is undisputed— and that Martin's counsel be tasked with identifying to the *pro se* Plaintiff the name and address of Martin's estate executor, administrator or representative, or alternatively, information relating to Martin's closest living relative. (Doc. 255, p. 7). In the motion for joinder, the *pro se* Plaintiff seeks joinder of Corizon Health, Inc. ("Corizon"), certain unidentified supervising physicians, and the Pennsylvania

Department of Corrections Bureau of Healthcare ("BHC") as Defendants. (Doc.

25, pp. 3-4). Corizon has filed papers opposing both of the motions (docs. 258-59),

and the *pro se* Plaintiff has filed reply papers (docs. 265-66). The motions are thus

ripe for this Court's disposition.

## II.    DISCUSSION

In light of the widely varying forms of relief requested by the *pro se* Plaintiff

in his motions and the diverse analyses attendant thereto, the Court will address

first the motion for substitution before turning to the Plaintiff's joinder request. For

all of the reasons that follow, we will ultimately deny both motions.

### A.    Motion for Substitution

Federal Rule of Civil Procedure 25 provides for substitution of parties in the

event that a claim is not extinguished as follows:

> If a party dies and the claim is not extinguished, the court
> may order substitution of the proper party. A motion for
> substitution may be made by any party or by the
> decedent's successor or representative. If the motion is
> not made within 90 days after service of a statement
> noting the death, the action by or against the decedent
> must be dismissed.

Fed. R. Civ. P. 25. "It is axiomatic that Rule 25 limits properly substituted parties

to those individuals who can adequately represent the interests of the deceased

party." *Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999). It is

well settled that decisions in this regard "are within the trial court's discretion." *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 836 (3d Cir. 1994).

In his motion for substitution, the *pro se* Plaintiff largely echoes the same arguments made by his prior counsel in briefing the first motion to substitute. In fact, the Plaintiff submits no new argument to the Court, nor does he suggest an appropriate party for substitution pursuant to Federal Rule of Civil Procedure 25, as we had directed him. Instead, the *pro se* Plaintiff argues that it is incumbent upon Martin's counsel, not the Plaintiff, to identify a proper party for substitution and that Martin's counsel should thus identify Martin's representative to the Court and the Plaintiff, seeking "disclosure of Martin's estate executor, administrator, or representative, or on [sic] the alternative, information relating to Martin's death, most recent known address, and closest living relatives." (Doc. 255, p. 3). Both Judge Carlson and the undersigned have thoroughly visited these contentions in our earlier memoranda, extending every courtesy to the Plaintiff as we did. In one final exercise of deference to the *pro se* Plaintiff, compelled by an abundance of caution in light of the fact that failure of an adequate substitute requires dismissal of the Plaintiff's lawsuit, we write briefly for benefit of the *pro se* Plaintiff to address his replicated arguments.

At the outset, we note that to grant the apparent injunctive request of the

Plaintiff and order the investigation and disclosure of Martin's estate information and potential representatives would be as redundant as it would be inefficacious. The Court has already ordered the parties to embark on just such an investigative journey, and the end result of those concerted efforts has already been detailed exhaustively by Judge Carlson and this Court. As we have previously noted, based upon the uncontroverted report of counsel for Martin, that search revealed that at the time of his death, Martin was divorced with no assets, liquid or otherwise, and no insurance policy; in fact, Martin owed back taxes and his bank accounts were overdrawn, and there was no estate to probate. The investigation further revealed that Martin had no heirs and no legal representative and that, even in the event that an appropriate successor could be identified, there were no assets to succeed to. The *pro se* Plaintiff's injunctive request that the Court order counsel for Martin to again investigate the potential existence of an adequate successor is thus denied; the Court is more than amply satisfied by the record that none exists..

The investigation also revealed that Martin had only living relative–a step-daughter through his dissolved marriage–and that her only connection to Martin was the result of her exceeding generosity in making a loan to Martin while he was living and handling his funeral arrangements at his death. We concluded that both Martin's step-daughter and her husband, also proposed by the Plaintiff as a

successor, were too far removed to adequately defend the lawsuit and lacked any interest in this litigation to satisfy the Court that they are the proper parties to appoint as successors pursuant to Rule 25. No new argument or evidence is before the Court on the Plaintiff's renewed motion which would compel the Court to alter that decision or our reasoning therefor, and we thus reaffirm our decision that Martin's closest living relative is also not an appropriate substitute party under Rule 25 and decisional law interpreting the same.

Finally, in denying the Plaintiff's first motion, we acknowledged Plaintiff's assertion that an insurance or other indemnity company might exist which could properly be substituted as a party. We tasked the parties to determine whether, in fact, such a company exists, and ordered the Plaintiff to file an appropriate motion to substitute in the event that such a company was discovered. The Plaintiff's papers are lacking in any reference to such a company, and indeed, opposing counsel observes that discovery has revealed that while there was an insurance policy in effect for employees such as Martin during 2004 and 2005 (not 2003 when the incident occurred), the limits of that policy were exhausted in or around February of 2008. (Doc. 258-2, p. 1). Thus, to the extent the *pro se* Plaintiff has not waived this argument by failing to resurrect it in his pending motions, we are nonetheless compelled to reject it, as there is no evidence that an insurance or

indemnity company exists and/or is the proper party to substitute for Martin.

We are not unsympathetic to the Plaintiff's plight and are cognizant of the stark reality that failure to identify an appropriate substitute party is dispositive to the Plaintiff's claims in this instance. However, regardless of the fact that the *pro se* Plaintiff's claims survive the death of Martin, a lawsuit simply cannot persist unless an appropriate adversary has been identified who possesses an interest in the litigation sufficient to satisfy the Court that he or she will adequately defend the deceased defendant's interests. It is clear that such a party has not, and most probably can not, be identified. In the absence of any evidence that an appropriate substitute party exists or ever will be identified, we cannot but again deny the Plaintiff's motion for substitution and dismiss his remaining causes of action. *See Froning's, Inc., v. Johnston Feed Serv.,* Inc., 568 F.2d 108, 110 n.4 (8th Cir. 1978) (decision whether to substitute parties lies within discretion of the trial judge).

### B. Motion for Joinder

As an alternative to his request for substitution, the *pro se* Plaintiff has also filed a motion seeking joinder of several of Martin's unidentified supervisors, Corizon Health, Inc. ("Corizon"), which he alleges employed or contracted with Martin, and the Pennsylvania Department of Corrections Bureau of Healthcare ("BHC"). While the *pro se* Plaintiff repeatedly requests "substitution" of these

parties in his motion, it is clear from the arguments made in his support and reply briefs that what the Plaintiff truly seeks is an order from the Court concluding that Federal Rule of Civil Procedure 15(a) permits amendment of his complaint at this juncture to join these new parties as defendants in this action.[2] Corizon asserts that the Plaintiff has failed to properly seek leave to amend as required by Local Rule 15.1, that any such leave would result in undue delay and substantial prejudice to the proposed defendants, and that, in any event, such leave would be futile because his vaguely proposed claims are ultimately meritless.

As a threshold matter, we note that our earlier Order (doc. 246) did not grant blanket leave to the *pro se* Plaintiff to seek out those who may have been, but for whatever reason were not, named as original Defendants nearly nine (9) years ago when this action was commenced. We limited our declination to dismiss the *pro se* Plaintiff's claims altogether to account for the possibility that an insurance or indemnity company might exist which could properly be *substituted* for the sole remaining Defendant, David Martin. It appears that now, faced with almost certain dismissal of his lawsuit, the Plaintiff is attempting to restate a brand new lawsuit against the various prospective defendants identified in his motion, not on the

---

[2] We are compelled to note that even in the event the Plaintiff had properly argued that these parties are adequate substitutes for Martin rather than additional defendants, that argument would nonetheless fail as there is no evidence before the Court that any or all of these proposed parties possess an interest in Martin's right sufficient to adequately defend the same.

theory of deliberate indifference that is the basis of his only remaining claims, but instead on a theory of negligence in supervision of Martin.

With this understanding of the basis of his new claims, we must analyze the Plaintiff's motion through the lens of both Federal Rule of Civil Procedure 15, which pertains to amendment of pleadings, and Federal Rules of Civil Procedure 19 and 20, which pertain to compulsive and permissive joinder, respectively, as the *pro se* Plaintiff's request for relief, at least on its face, implicates both rules. We thus begin our analysis by determining whether the proposed defendants are appropriate parties to be joined under the requirements of either Rule 19 or Rule 20 before proceeding to an analysis of the requirements of Rule 15.

### 1.     Rules 19 and 20: Compulsive and Permissive Joinder

Federal Rule of Civil Procedure 19 contemplates mandatory joinder of parties in certain circumstances, providing as follows:

> (1)   Required party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's

absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Similarly, Rule 20 provides for permissive joinder of parties as follows:

> (2) Defendants. Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The Plaintiff, although he offers no particular argument in support of his position, cites to both rules before broadly concluding that the parties identified in his papers must be joined in this litigation.

At the outset, we reject the Plaintiff's contention that the parties identified in his papers are subject to mandatory or compulsive joinder pursuant to Rule 19. That Rule pertains where the party sought to be joined is a real party in interest to

the subject matter of the action; that is, where the party identified by the movant has some ownership or other interest in whatever is subject to the action or the court could not accord complete and final relief to any party without ordering his joinder. The *pro se* Plaintiff's papers, the brevity of which speaks volumes as to the merits of his arguments, are devoid of anything beyond general assertions to suggest that these vaguely identified parties possess any interest in this litigation such that Rule 19 mandates their joinder. For this reason, we will deny the *pro se* Plaintiff's motion to the extent it can be construed to seek the compulsive joinder of any party pursuant to Rule 19.

Our analysis under Rule 20 differs slightly, however, because by its nature, the rule is permissive and accords broader relief. Specifically, Rule 20 permits joinder where the plaintiff demonstrates that his claims against the parties sought to be joined "arise out of the same transaction(s) or occurrence(s)" as the existing claims and "that a question of law or fact common to all joined parties will arise." *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 143-44 (E.D. Pa. May 11, 2001). Corizon asserts in its opposition papers that there are no facts before the Court from which we might conclude that the claims against the parties sought to be joined arise from the same occurrences as the claims against Martin. However, viewing the record in the Plaintiff's favor, we must disagree.

While the particulars of the Plaintiff's proposed claim are less than pellucid, it can be fairly drawn from his motion seeking joinder that he believes that both Corizon, as Martin's one-time employer, and his other unidentified supervisors are liable vicariously for Martin's alleged medical errors during his treatment in 2003. (Doc. 253, pp. 3-5). On that basis, then, it is thus at least plausible that there exist common issues of fact as between Martin and the prospective defendants which might warrant their joinder in this action. While the *pro se* Plaintiff offers no such facts in his papers, we can fairly speculate that as Martin's supervisors and/or employers, there could obtain common factual disputes with regard to the 2003 incident. Thus, we conclude that the prospective parties could have been joined pursuant to Rule 20 at the commencement of this action or shortly thereafter.

However, the mere fact that the parties might have been properly joined when the complaint was initially filed is by itself not sufficient to support the filing of claims against them today, as the *pro se* Plaintiff must also demonstrate that Rule 15 permits him to amend his pleadings to join those parties at this late juncture. We thus turn next to a consideration of the requirements of Rule 15.

## 2.    Rule 15: Amendment

Where a party, *pro se* or counseled, moves for leave to amend a pleading

after a responsive pleading has been filed or the scheduling deadline has elapsed, the court must analyze the request under both Rule 15(a) and Rule 16(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. R. 15(a) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."); Fed. R. Civ. P. R. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Leave to amend a pleading "shall be freely given when justice so requires" pursuant to Rule 15(a)(2).

"In the absence of substantial or undue prejudice, denial [of amendment] must instead be based on bad faith, dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiencies by amendments previously allowed, or futility of amendment." *Braddy-Robinson v. Hilton Scranton Hotel & Conf. Ctr.*, 2008 U.S. Dist. LEXIS 72643, *4-5 (M.D. Pa. 2008) (quoting *Lorenz v. CSX Corp.*, 1 F.3d, 1406, 1414 (3d Cir. 1993)). An amendment is "futile" if it fails to state a claim for which relief could be granted. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). "[P]rejudice to the non-moving party is the touchstone for the denial of amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). Ultimately, whether the proposed defendants could have permissibly been joined at one time pursuant to Rule 20 is of little moment because we conclude that the Plaintiff has failed to

establish that amendment is now permitted by Rule 15. For a variety of reasons, each of which we address thoroughly below for the benefit of the *pro se* Plaintiff, we must deny his motion for leave to amend.

First, the Plaintiff's motion to amend demonstrates a total lack of effort to comply with the Local Rules of Court, of which we presume the *pro se* Plaintiff must be aware after litigating this federal matter for nearly nine (9) years, largely without the aid of counsel. Of particular relevance here, Local Rule 15.1 provides that:

> The party filing the motion requesting leave to file an amended pleading shall provide: (1) the proposed amended pleading as set forth in subsection (a) of this rule, and (2) a copy of the original pleading in which stricken material has been lined through and any new material has been inserted and underlined or set forth in bold-faced type.

Local Rule 15.1. The purpose of this rule is two-fold: first, it allows the movant's adversary to adequately determine the claims against it and properly oppose the motion for leave to amend, and second, it allows the Court to review the merits of the claims and determine ultimately whether leave to amend would be futile or whether any of the other factors relevant to such leave are implicated. Here, absent such a proposed pleading, the *pro se* Plaintiff has made the Court's task all the more burdensome by impelling us to consider his proposed claims on the basis of

the arguments in his brief alone.

Notwithstanding this total lack of compliance with this Court's rules, we are mindful of Plaintiff's *pro se* status and thus are inclined to exercise our discretion to overlook his procedural failures because his motion papers otherwise appear to set forth all facts in his possession with regard to the proposed new parties, and the claims thereagainst can be presumed from the record as currently developed. Still, despite our generous deference to the Plaintiff, we cannot but conclude that his undue delay in seeking leave to amend would result in substantial prejudice to the parties sought to be joined and impose a considerable burden on the Court and, perhaps more importantly, that the proposed amendments would nonetheless be futile as the claims the Plaintiff seeks to assert are meritless.

First, we are in agreement with Corizon that the Plaintiff has unduly delayed in seeking leave to amend his complaint. It is true, as Plaintiff posits that "[t]here is . . .no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue,'" and whether delay is undue depends on the particular facts and circumstance of each case. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 (3d Cir. 2006); *but cf. Maier v. Canon McMillan Sch. Dist.*, 2009 U.S. Dist. LEXIS 42009, *6-7 (W.D. Pa. May 18, 2009) (fourteen month delay where discovery was closed and summary judgment motions were pending is undue

where parties "failed to give any credible reason justifying their delay");

*Nat'l Recovery Agency, Inc., v. AIG Domestic Claims, Inc.*, 2006 U.S. Dist. LEXIS 27889, *4-13 (M.D. Pa. May 9, 2006) (five month delay before moving to amend answer, before close of discovery and absent prejudice to plaintiff, is not undue). Thus, in determining whether leave to amend is appropriate or whether the movant has unduly delayed in seeking leave, we are directed to consider the totality of the circumstances of the case.

Any reading of the record before us, however, reveals that we are here not presented with a situation where a plaintiff, several months or even a few years into litigation, has stumbled across a new cause of action or adversary. Indeed, we cannot emphasize enough that it has been nearly *nine (9) years* since Plaintiff commenced this action, and not once during that period, whether when counseled or *pro se*, has he sought leave to amend or otherwise made reference to any of the parties that he now seeks to join as defendants. The failure to diligently investigate the roles of these proposed parties at the onset of this litigation or thereafter is entirely the Plaintiff's own, and to permit him to amend his complaint at this late juncture would be to effectively sanction negligent or feckless self-representation. Indeed, the *pro se* Plaintiff offers no explanation for his failure to seek leave to amend earlier in this litigation, and we cannot on the papers before us conceive of

any except blatant carelessness. Such inexplicably undue delay certainly weighs against a ruling in the Plaintiff's favor on this motion.

Further, to permit the Plaintiff to surprise these new parties by adding them as defendants at this stage would result in substantial prejudice thereto and would indeed place a significant burden on this Court, which has already extended every courtesy to the *pro se* Plaintiff over the course of this litigation. The events which form the basis of the *pro se* Plaintiff's claims, by his own allegation, occurred in December of 2003 and possibly prior, presuming a failure to train or supervise theory would be presented. Thus, evidence and documents that relate to the new claims are nearly ten (10) years old, and at least one crucial witness, Defendant David Martin, has since passed away, which in and of itself bespeaks a certain palpable level of prejudice to the parties charged with defending these new claims. Further, permitting the claims to be added and parties joined at this stage would require the expenditure of significant additional resources to reopen discovery and prepare for trial, including motions practice which we anticipate would likely mirror those motions already adjudicated by the Court, significantly delaying final resolution of this long-aged dispute. For this additional reason, in conjunction with Plaintiff's unreasonable lack of diligence, the inexplicable delay in seeking leave to amend, and the undue burden which would be placed on the Court and the

prospective new parties, we conclude that granting the Plaintiff leave to amend at this late juncture would be entirely improper and unjust.

Our decision is further bolstered by the additional and perhaps more critical reason that, irrespective of whether we exercised our discretion and concluded that undue delay, lack of diligence, and substantial prejudice do not warrant denial of the Plaintiff's motion, the apparent claims that the Plaintiff now seeks to assert are nonetheless precluded by both the operative statute of limitations and substantive law, thus rendering futile any pleading filed by the Plaintiff against the parties he seeks to join. For these compelling additional reasons, we are constrained to deny the Plaintiff's motion for joinder and dismiss this action.

It is true, as the Plaintiff asserts, that Rule 15(a) provides that leave to amend should be liberally granted when justice so requires; however, it has long been observed that district courts may nonetheless deny leave when any such amendment would be futile. As noted above, a proposed amendment is futile, and leave to amend should be denied, where it fails to state a claim for which relief could be granted. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). Such a case exists where the statute of limitations or some other affirmative defense would compel dismissal of the claim; thus, if the statute of limitations has expired or some other legal defense bars the Plaintiff's proposed claims, leave to

amend should be denied. *Id.*

Corizon's arguments here are two-fold: first, it argues that the statute of limitations applicable to Section 1983 deliberate indifference claims is two years, and thus because the conduct underlying the Plaintiff's claims took place at the latest in December of 2003, any proposed amendment is untimely; second, it asserts that vicarious liability or *respondeat superior* liability is an impermissible basis for stating a Section 1983 deliberate indifference claim. We address these two arguments *seriatim*, ultimately finding merit in both and concluding that the Plaintiff's proposed claims would not withstand Rule 12(b)(6) scrutiny and that leave to amend would thus be futile.

As we have alluded above, the *pro se* Plaintiff has failed to file anything resembling a proposed amended pleading such that the Court could fully ascertain the scope of the claims against the newly identified defendants. We are again cognizant, however, of the Plaintiff's *pro se* status and thus attempt to glean from his motion and brief, without the aid of an actual proposed pleading, those facts which he believes support a claim against the prospective defendants. From our review of Plaintiff's papers, it is clear that his proposed claims against the newly identified defendants derive from Martin's employment and the prospective defendants' roles as his employer and/or supervisors and relate to their training,

supervision, and employment of Martin at the time of his alleged negligent conduct in December of 2003. We consider first whether the Plaintiff's claims against the prospective defendants as they relate to this time period are timely and, second, whether substantive law governing Section 1983 supervisory liability claims nonetheless precludes the Plaintiff's requested amendment.

It is clear from the record before the Court that the actions underlying the Plaintiff's claims against Martin, and thus his claims for supervisory liability, are based on conduct which took place in December of 2003—nearly ten (10) years before he filed his present motion for joinder and thus seven years and four (4) months beyond the two year statute of limitations that all parties concede applies to Section 1983 causes of action, seemingly barring the Plaintiff's new claims. *See Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993). The *pro se* Plaintiff contends that this is of no moment, however, because the proposed amendments "relate back" to the date of the original complaint pursuant to Federal Rule 15(c)(1).

Rule 15(c)(1) provides that amendments relate back to the date of the original pleading, thus avoiding a statute of limitations defense, when they arise out of the same occurrences set forth in the original pleading and, "within the [120 day] period provided by Rule 4(m) for serving the summons and complaint," the party sought to be added by amendment:

(i)   received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). In order for Rule 15(c) to apply, it is "critical" that the plaintiff "provide sufficient evidence that the newly named defendants were on notice that they might be named as parties to the litigation." *Averhart v. Commcn's Workers of Am.*, 2013 U.S. Dist. LEXIS 12212, *8-9 (D.N.J. Jan. 30, 2013). Our inquiry then is whether the plaintiff has established that the prospective defendants "knew or should have known that [they] would have been named as a defendant but for an error." *Krupski v. Costa Crociere*, 130 S. Ct. 2485, 2493-94 (2010). The Supreme Court has admonished that courts must not "conflate knowledge of a party's existence with the absence of mistake," explaining that merely because a plaintiff "knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Id.* at 2494.

Guided by this precedent, we cannot but conclude that the Plaintiff here has failed to establish that relation back is appropriate. There is no evidence before the Court, and indeed no argument beyond broad speculation, that the prospective new defendants were aware within the 120 day period following commencement of this action that, but for a mistake on the Plaintiff's part, they would have been named

as the defendants in this litigation.[3] Not only has the Plaintiff failed to establish to any degree that the proposed defendants were on notice that they should or would have been named as defendants earlier absent a mistake on the Plaintiff's behalf, the Plaintiff has not even shown that his omission was indeed a mistake. It does not appear to this Court that the *pro se* Plaintiff's failure to name any or all of these proposed parties in his original complaint more than eight (8) years ago was a mistake; rather, it is clear that the *pro se* Plaintiff, now faced with the impending dismissal of his lawsuit as a result of Martin's death and poverty, merely seeks a new means of recovery. One's disappointment with his chosen litigation strategy, however, does not satisfy the requirements of the relation back doctrine. To permit relation back for this purpose would run counter to the purpose of Rule 15(c) and, again, endorse negligent litigation strategies. We thus conclude that the statute of limitations precludes the *pro se* Plaintiff from asserting new claims against new defendants at this juncture and that Rule 15(c)'s relation back doctrine does not

---

[3] After reciting broad principles of Rule 15(c) jurisprudence, the Plaintiff argues that there is no evidence of "bad faith" or "improper motive" on his part and that the only justification for denial of amendment is undue delay. This argument goes to our analysis under Rule 15(a), not Rule 15(c), and is thus of little moment to our relation back analysis, which tasks the Court only to consider whether the prospective defendants knew or should have known that they would have been named as defendants but for a mistake or inadvertence on the Plaintiff's part. *See Krupski*, 130 S. Ct. at 2493 (diligence irrelevant for purposes of Rule 15(c) analysis; "information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake . . .").

apply to these circumstances.

A second ground exists, however, for a finding of futility, and thus whether or not we apply the relation back doctrine to preclude a statute of limitations bar, the Plaintiff's proposed claims are nonetheless without merit. Plaintiff makes clear that the only basis for his request to join these prospective defendants is their role as Martin's employer and/or supervisors, and his papers set forth no independent basis for a finding of liability against them. (Doc. 266 (seeking liability against "those who hired, trained, supervised, and contracted Martin out to satellite location (prison) at SCI-Frackville (the place of the incident which precipitated this action)"). It has long been established and consistently been reaffirmed, however, that vicarious liability does not exist in causes of action pursuant to Section 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on *respondeat superior* liability."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (each defendant "must have personal involvement in the alleged wrongdoing."). Thus, because the *pro se* Plaintiff's claims are premised entirely on the proposed defendants' capacities as Martin's supervisors and employer, and the Plaintiff does not argue otherwise in his reply papers, amendment of his pleading to join the prospective defendants would nonetheless be futile for this additional reason. Accordingly, we will deny the

Plaintiff's motion for joinder and leave to amend in its entirety.[4]

## V.    CONCLUSION

In reaching the above conclusions, we are not unsympathetic to the stark reality that as a result of the lack of an appropriate substitute for Defendant Martin, Federal Rule of Civil Procedure 25 calls for dismissal of the remainder of the Plaintiff's action in its entirety. We have to this juncture, however, provided the Plaintiff with every opportunity to endeavor to find a suitable successor, and the failure of those efforts dictates the result we reach today. For all of the reasons articulated hereinabove, the Court is constrained to deny the Plaintiff's motion to substitute (doc. 252) and motion for joinder and amendment (doc. 254) and thus dismiss the remainder of his claims against Defendant Martin. An appropriate order shall issue.

---

[4] The Plaintiff's motion also seeks injunctive relief from the Court in the form of an order restraining the transfer or disposal of Martin's assets pending resolution of this litigation. As this Court and Judge Carlson have already found, and the Plaintiff has not controverted, Martin *has* no assets which could be transferred or disposed or otherwise awarded to Martin or anyone else. For this reason, in addition to our conclusion that this matter must be dismissed for lack of an appropriate substitute party, we reject the Plaintiff's request for injunctive relief.